| JS-6 | UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br><br>CIVIL MINUTES - GENERAL | Priority ____<br>Send ____<br>Enter ____<br>Closed ____<br>JS-5/JS-6 ____<br>Scan Only ____ |
|---|---|---|

**CASE NO.:** <u>CV 13-03177 SJO (SHx)</u>    **DATE:** <u>August 14, 2013</u>

**TITLE:**   <u>The Melissa D. Duflock Revocable Trust v. Chevron Corporation, et al.</u>

========================================================================
**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                                Not Present
Courtroom Clerk                                 Court Reporter

**COUNSEL PRESENT FOR PLAINTIFFS:**             **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                                     Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER GRANTING MOTION TO REMAND CASE TO SAN LUIS OBISPO SUPERIOR COURT** [Docket No. 18]; **DENYING AS MOOT MOTION TO DISMISS PLAINTIFF'S CLAIMS** [Docket No. 25]

This matter comes before the Court on Plaintiff The Melissa D. Duflock Revocable Trust's ("Plaintiff") Motion to Remand Case to California Superior Court for the County fo San Luis Obispo ("Remand Motion"), in response to Defendants Chevron Corporation, Chevron U.S.A. Inc., and Chevron San Ardo Energy Company's (collectively, "Chevron" or "Defendants") Notice of Removal ("Notice"). The Court also considers a Motion to Dismiss Plaintiff's claims ("Dismissal Motion") filed by Defendants. The Court found these matters suitable for disposition without oral argument and vacated the hearings set for July 29, 2013. *See* Fed. R. Civ. P. 78(b). For the following reasons, the Court **GRANTS** Plaintiff's Remand Motion and **DENIES AS MOOT** Defendants' Dismissal Motion.

I.    FACTUAL AND PROCEDURAL HISTORY

Plaintiff alleges the following facts. Plaintiff is a California-based trust operating on behalf of a California resident. (Notice of Removal ("Notice") Ex. A ("Complaint") ¶ 7.) Defendants are all corporations with their principal places of business in California. (Compl. ¶¶ 8-10.) Chevron collectively operates and owns the rights to leases on over 55,000 wells in California (collectively, "Leases"), which wells it operates for oil and gas production purposes. (Compl. ¶ 1.) Chevron is solely responsible for determining, and paying, royalties attributable to production and sale of the oil and gas taken pursuant to these leases. (Compl. ¶ 2.) Plaintiff holds a royalty interest in one of these leases ("Lease" or "Interest") that entitles it to payment from Chevron. (Compl. ¶ 4.)

Plaintiff alleges that Chevron has failed and continues to fail to pay the full royalties owed to Plaintiff and other owners of leases in California. (Compl. ¶¶ 3-5, 17-29.) Plaintiff filed the present action on behalf of itself as well as a larger class of "similarly situated" parties, defined as "[a]ll present and former owners of royalty interests which burden oil and gas leases and wells in

JS-6

Case 2:13-cv-03177-SJO-SH Document 34 Filed 08/14/13 Page 2 of 9 Page ID #:870

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: <u>CV 13-03177 SJO (SHx)</u>   DATE: <u>August 14, 2013</u>

California now or formerly held by [Chevron]." (Compl. ¶¶ 6, 32.) Based on this definition of the class, Plaintiff believes there to be many hundreds of potential class members. (Compl. ¶ 33.)

Relevantly here, Chevron entered into an agreement to disclose records to arbitrate any disputes ("Agreement") with Energy Management Services ("EMS"), a nonparty to this suit, in exchange for information related to a certain lease. (Dismissal Mot. 2, ECF No. 25; Opp'n to Dismissal Mot. ("Dismissal Opposition") 3, ECF No. 27.) The information released related to royalty payment records by two class members, Gordon and Vicki Rosenberg (collectively, "Rosenbergs"), who employed EMS to audit Chevron' activities. (Opp'n 4.) Only Chevron and EMS are signatories to the Agreement. (Opp'n 4.) Parties disagree as to whether the Agreement applies to Plaintiff here.

Plaintiff filed this case in the Superior Court of California for the County of San Luis Obispo ("State Court") on March 22, 2013, and served Defendants with the Complaint shortly thereafter. (See Compl.) Defendants Removed the case to this Court on March 3, 2013 based on a provision in the Class Action Fairness Act ("CAFA") that allows for removal of certain class actions. (*See* Notice (citing to 28 U.S.C. § 1332(d)).)

Plaintiff filed the Motion on June 3, 2013. (*See* Remand Mot., ECF No. 18.) Defendants have opposed the Motion (Opp'n to Remand Mot. ("Remand Opposition"), ECF No. 26), and Plaintiff has replied in support thereof (Reply in Supp. of Remand Mot. ("Remand Reply"), ECF No. 28). Defendants filed their Dismissal Motion on June 10, 2013. Plaintiff filed the Dismissal Opposition on July 1, 2013, and Defendants replied in support thereof on July 15, 2013. (Dismissal Opp'n; Reply in Supp. of Mot. ("Dismissal Reply"), ECF No. 29.)

II.   DISCUSSION

   A.   Motion to Remand

It is a fundamental legal principle that federal courts are courts of limited jurisdiction. The removal statute, 28 U.S.C. § 1441, allows defendants to remove to federal district court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989) (citation omitted). The Court strictly construes the removal statute against removal jurisdiction. *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988). "The strong presumption against removal means that the defendant always bears the burden of establishing that removal is proper." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (quotation marks omitted). Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance. *Id.* The Court "has the duty to remand" if it lacks subject matter jurisdiction over a removed action. *Sparta Surgical Corp. v. Nat'l Ass'n. Sec. Dealers, Inc.*, 159 F.3d 1209, 1211 (9th Cir. 1998). Lack of subject matter jurisdiction may be raised by any party at any time, and it is never waived: "[i]f

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 13-03177 SJO (SHx)</u>  DATE: <u>August 14, 2013</u>

the court determines at any time that it lacks subject-matter jurisdiction, the Court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

Defendants have claimed federal jurisdiction under CAFA. (*See generally* Notice.) CAFA provides district courts with original jurisdiction over "mass actions." *See* 28 U.S.C. § 1332(d)(11)(A). Under CAFA, district courts are vested with "original jurisdiction of any civil action in which . . . the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," and in which the aggregate number of proposed plaintiffs is 100 or greater, and "any member of the plaintiff class is a citizen of a state different from any defendant." *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994 (9th Cir. 2007) (quoting 28 U.S.C. § 1332(d)(2)). Congress passed CAFA "primarily to curb perceived abuses of the class action device which . . . had often been used to litigate multi-state or even national class actions in state courts." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090 (9th Cir. 2010) (quoting *Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 952 (9th Cir.)).

Plaintiff does not contest that Defendants satisfy the three basic requirements underpinning CAFA federal jurisdiction. Instead, Plaintiff provides three alternative bases for remand based on exceptions to Defendants' assertion of jurisdiction under the CAFA: (1) the "local controversy" exception set forth in 28 U.S.C. § 1332(d)(4)(A); (2) the "home-state controversy" exception set forth in 28 U.S.C. § 1332(d)(4)(B); and (3) the "totality of circumstances" exception set forth in 28 U.S.C. § 1332(d)(3). (*See generally* Remand Mot.)

CAFA is silent on which parties bear the burden of proof in determining the applicability of exceptions to CAFA jurisdiction. *See* 28 U.S.C. § 1332(d); *Kearns v. Ford Motor Co.*, 05-CV-5644, 2005 WL 3967998 (C.D. Cal. Nov. 21, 2005). But fortunately Congress has provided direct guidance to the judiciary on this point:

> It is the Committee's intention with regard to each of these exceptions that the party opposing federal jurisdiction shall have the burden of demonstrating the applicability of an exemption. Thus, if a plaintiff seeks to have a class action remanded under section 1332(d)(4)(A) on the ground that the primary defendants and two-thirds or more of the class members are citizens of the home state, that plaintiff shall have the burden of demonstrating that these criteria are met by the lawsuit.

S. REP. 109-14, 44, 2005 U.S.C.C.A.N. 3, 41; *see also Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1165 (11th Cir. 2006); *Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 681 (7th Cir. 2006). This intention is also consistent with the structure of CAFA, which grants jurisdiction to

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 13-03177 SJO (SHx)</u>   DATE: <u>August 14, 2013</u>

certain types of cases first before subsequently establishing limited exceptions to CAFA jurisdiction. *See* 28 U.S.C. § 1332(d). The Court therefore concludes that Plaintiff shall bear the burden of establishing applicability of the three exceptions to CAFA jurisdiction it claims apply here.

The Court further notes that the Local Controversy Exception requires a more stringent showing than the Home-State Controversy Exception where (as here) the Defendants are all located in the state, and so it addresses in full only the latter two claimed exceptions.

      1.      <u>Home-State Controversy Exception</u>

Under the Home-State Controversy Exception, a district court must decline jurisdiction over CAFA cases in which (1) "two-thirds or more of the members of all proposed plaintiff classes in the aggregate"; and (2) "the primary defendants," are citizens of the State in which the action was filed. 28 U.S.C. § 1332(d)(4)(B). Here, as above, the Parties do not dispute that all primary defendants are citizens of California.

Parties disagree whether Plaintiff has successfully established that two-thirds of its proposed class qualify as California citizens. Plaintiff relies on a partial set of class data produced by Defendants covering payments in the years 2003-2013, and supplements that data with inferences based on the class description and presumed population trends over time. (Remand Mot. 9-11.) Specifically, Plaintiff has established that in 2013, exactly two-thirds of the proposed class received their payments in California. (Decl. of Christopher D. Edgington in Supp. of Remand Mot. ("Edgington Decl.") ¶¶ 9B, 9D, ECF No. 19.) Plaintiff has also established that from 2003-2013, 60.8% of all payments went to payees residing in California. (Edgington Decl. ¶ 9A.) Plaintiff does not have access to data on payees before 2003, but argues that this population is probably much more California-heavy, because (1) the original payees were likely almost all California citizens; but (2) this number likely decreased over time as people moved away, or passed on their interests to descendants more likely to live in other parts of the country. (Remand Mot. 10-11.) The Court is cognizant of Plaintiff's arguments here, but it cannot rely on data only for the year 2013 to determine whether two-thirds of the class over the history of the leases qualifies as a California citizen. The data also do not support Plaintiff's inferences: from 2004 through 2012, the percent of payees hailing from California only once rose above 60 percent (in 2010, at 60.1%). (Edgington Decl. ¶ 9B.) Plaintiff relies heavily on the data from 2003 and 2013, when the percentage rose to the two-thirds threshold; but the 2013 year of data is still incomplete, and Defendants have pointed out that the 2003 data set "reflects a number of changes in ownership that occurred in 2003, a year during which over 450 private California oil and gas leases were sold to a third party oil and gas producer." (Remand Opp'n 10; Decl. of Greg C. Morby in Supp. of Remand Opp'n ("Morby Decl.") ¶ 11, ECF No. 26-1.) Outside those two years, the percentage of California citizens in the proposed class remained somewhat steady over the 11-year time frame, which also belies Plaintiff's argument that the number of California citizens in the proposed class would necessarily decrease over time. (*See* Edgington Decl. ¶ 9B.) Thus, even assuming the original

lease owners were all Californian citizens, as Plaintiff asks this Court to do, the Court cannot conclude from the evidence presented that two-thirds of payees clearly reside or resided in California, and so the Home-State Controversy Exception cannot apply (and by extension, the Local Controversy Exception.)[1]

      2.      Totality of Circumstances Exception

Under the Totality of Circumstances Exception, a district court may, "in the interests of justice and looking at the totality of the circumstances," decline jurisdiction over CAFA cases in which (1) "greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate"; and (2) "the primary defendants," are citizens of the State in which the action was filed. 28 U.S.C. § 1332(d)(3). In making this determination, courts are charged with considering the following factors:

> (A) whether the claims asserted involve matters of national or interstate interest;
> (B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;
> (C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;
> (D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;
> (E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and

---

[1] The Court is in receipt of Plaintiff's Request for Judicial Notice providing excerpted census data and other information relating to out-migration from California. (Req. for Judicial Notice, ECF No. 28-2.) The Court reviewed these documents, but was unable to identify any information demonstrating as a legal matter that two-thirds of the proposed class must be California citizens. Population analysis is necessarily a complex proposition, requiring expertise that neither this Court nor, apparently, the parties possess. And Plaintiff has not provided expert testimony from a population expert suggesting that as a near-statistical certainty two-thirds of the proposed class must be California citizens. This absence is particularly striking because out-migration does not occur equally among all populations; for instance, older, wealthier, and landowning populations (as the proposed class members appear to be) are less likely to migrate between states over a given period of time.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:   <u>CV 13-03177 SJO (SHx)</u>             DATE:  <u>August 14, 2013</u>

> (F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

28 U.S.C. § 1332(d)(3)(A)-(F).  Parties do not dispute that greater than one-third of the proposed class members are California citizens, and the Court has already noted Plaintiffs failed to establish that two-thirds of the proposed class members are California citizens.  Similarly, and as above, Parties do not dispute that Defendants are all California citizens.  The Court therefore turns directly to the six-factor test in determining whether it should decline to exercise jurisdiction here.

### a.   <u>National Interest</u>

The first factor the Court must consider is whether California has an overarching interest in the litigation that supersedes any national or interstate interests.  Plaintiff argues that this factor supports remand here because the clear majority of potential class members are California citizens and the Defendants are all California citizens. (Remand Mot. 14.)  Defendant counters by drawing the Court's attention to the numerous proposed class members located in over forty different states. (Remand Mot. 12-13.)  But both parties miss the larger purpose of this factor. The Court turns again to Congress's notes in passing § 1332(d)(3) to help explain its purpose:

> If a case presents issues of national or interstate significance, that argues in favor of the matter being handled in federal court. For example, if a nationally distributed pharmaceutical product is alleged to have caused injurious side-effects and class actions on the subject are filed, those cases presumably should be heard in federal court because of the nationwide ramifications of the dispute and the probable interface with federal drug laws (even if claims are not directly filed under such laws). Under this factor, the federal court should inquire whether the case does present issues of national or interstate significance of this sort. If such issues are identified, that point favors the exercise of federal jurisdiction.

S. REP. 109-14, 36, 2005 U.S.C.C.A.N. 3, 35; see also *Phillips v. Kaiser Found. Health Plan, Inc.*, C 11-02326 CRB, 2011 WL 3047475 (N.D. Cal. July 25, 2011) ("Congress did not intend for plaintiffs to defeat federal jurisdiction by filing essentially national or regional class actions limited to plaintiffs from one state.").  Here, Chevron has indicated that it manages its relations with California leaseholders in Texas, which also manages relations with leaseholders in other states. (Morby Decl. ¶ 14; *see* Remand Opp'n 4 ("Any finding by the Court here that the practices or policies of [Chevron] are improper may . . . have impact well beyond California.").) Importantly, the Morby Declaration does not indicate explicitly that the same formula is used in California as is used elsewhere to calculate royalties, nor that Chevron's contractual relationships with leaseholders in other states are identical, or even substantially similar, to its contractual

JS-6                     UNITED STATES DISTRICT COURT
                          CENTRAL DISTRICT OF CALIFORNIA

                              CIVIL MINUTES - GENERAL

CASE NO.:  CV 13-03177 SJO (SHx)            DATE:  August 14, 2013

relationships with leaseholders of wells in California. Thus, Defendants cannot establish indisputably that this lawsuit will have national implications. Nonetheless, on the facts provided it is at least possible that the implications of this lawsuit could influence Chevron's relations with lease owners at wells across the country. This situation is similar to the pharmaceutical scenario described above, where the resolution of this case had the possibility of affecting actions brought across the country. *See* S. REP. 109-14, 36, 2005 U.S.C.C.A.N. 3, 38-39 (noting that federal jurisdiction would be appropriate even where "[t]he state laws that would apply in all of these [potential related] cases would vary," because "allowing a single court to sort out such issues and handle the balance of the litigation would make sense both from an efficiency and federalism standpoint"). Given the potential national ramifications, and even disregarding the significant national presence in Plaintiff's own proposed class, the Court determines that the national interest in resolution of this issue is not wholly superseded by California's interests in this regard. This factor therefore weighs in favor of maintaining jurisdiction.[2]

        b.    <u>Governing Law</u>

The second factor looks at the governing law that will be applied to this case. It is not disputed that Plaintiff brings claims exclusively under California law, and that California law must apply exclusively to these claims. This factor therefore weighs in favor of remand.

        c.    <u>Artful Pleading</u>

The third factor asks whether plaintiffs, in bringing a potential class action, have artfully constructed their claims to avoid clear federal jurisdiction. Here, Plaintiff has limited its proposed class to owners of California. (*See generally* Compl.) Plaintiff has not limited the proposed class further to artificially create an entirely California-based proposed class group. (Remand Mot. 14.) Plaintiff is to be commended for not artificially limiting the class beyond owners of California leases; but given that Chevron calculates and pays royalties on leases in multiple states (Morby Decl. ¶ 14), Plaintiff's limitation of its proposed class to California can only be seen as an artificial limitation of the potential class of affected leaseholders. This is not to say that Plaintiff has acted in bad faith in any way: the leases based in California differ from those in other states in that they must be governed by California law, and this is a valid reason generally to constrict a class. But given Congress's intent in passing CAFA, particularly its observation that it would be appropriate for a single federal court to manage related claims even where they are covered by different state

---

[2] The Court is not convinced by Defendants' additional argument that this case raises issues of national interest because arbitration may be appropriate under the Federal Arbitration Act ("FAA"). (Remand Opp'n 14-15.) Defenses raised should not affect the CAFA remand question any more than federal questions raised in any defense may qualify a case for federal question jurisdiction. *See Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986).

laws, S. REP. 109-14, 36, 2005 U.S.C.C.A.N. 3, 38-39, this Court finds that the class is restricted beyond what it might have been, and this factor therefore weighs in favor of federal jurisdiction.

### d. Nexus with Parties or Harm

The fourth factor to be asks whether the host state has a "distinct" nexus with the class members, harm, or defendants in the case. Undeniably here, California has a strong nexus with the case because the large majority of the proposed class members are California citizens, as are each of the Defendants. Defendant points out that Texas also has a strong nexus with the case, not only because eight percent of the proposed class lives in Texas but also because the relevant calculations which have been alleged to be fraudulent and/or incorrect were made by Chevron officials working in Texas. (Remand Opp'n 13-14.) But as Plaintiffs point out, this argument violates the "nerve center" test of corporate citizenship. (Remand Mot. 7.) All Defendants are citizens of, and have their primary place of business in California. The mere fact that California corporations outsourced some of their activity to Texas does not create a separate nexus with Texas capable of undermining the clear California nexus here. This factor therefore weighs in favor of remand.

### e. Dominance of In-State Class Members

The fifth factor examines the portion of the class coming from the host state. Here, California clearly hosts the majority—even close to two-thirds—of the potential class members, as well as all Defendants. This factor therefore weighs in favor of remand.

### f. Existence of Related Lawsuits

Finally, the last factor looks at the existence of related lawsuits. The parties have not identified, nor is the Court otherwise aware of, any related lawsuits at this time. This factor therefore weighs in favor of remand.

### g. Balancing the Factors

As summarized above, four of the six factors the Court identified weigh in favor of remand. But the Court cannot simply rule that remand is appropriate based on the fact that four out of six factors favor remand. In this case, as above, the Court is cognizant that Chevron manages leases and calculates royalty payments to leaseholders located across the United States. If Chevron has acted improperly with respect to its leases in California, there is a reasonable chance that it has done so in other states. As the Court discussed in detail above, in passing CAFA and granting additional federal jurisdiction to more class actions Congress was particularly concerned that cases possibly affecting the interests of people regionally or nationally were being tried and determined in individual state courts.

JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 13-03177 SJO (SHx)</u>　　　　**DATE:** <u>August 14, 2013</u>

In this case, however, Defendants have failed to provide compelling evidence of national interest that would supersede the four factors weighing in favor of remand. Defendants have noted that Chevron employees in Texas manage its relationship with leaseholders of wells in California as well as other states—as above, they have not demonstrated that the contracts or royalty calculations are uniform across different states (and in fact they may well be different because they are subject to a wide variety of state laws). Plaintiffs have successfully demonstrated that four of the six factors above favor remand, and Defendants fail to provide compelling arguments against remand sufficient to overcome Plaintiffs' demonstration. The Court therefore **GRANTS** Plaintiff's Remand Motion.

　　B.　　<u>Motion to Dismiss</u>

Because the Court has determined that remand is appropriate, it need not address the merits of Defendants' Dismissal Motion, and therefore **DENIES AS MOOT** the motion.

III.　　<u>RULING</u>

For the foregoing reasons, the Court **GRANTS** Plaintiff's Remand Motion, and **DENIES AS MOOT** Defendants' Dismissal Motion. The Court **REMANDS** Plaintiffs' claims California Superior Court for the County of San Luis Obispo. This matter shall close.

IT IS SO ORDERED.